Robert J. Schmelzle, Appellee, v. Transportation
Investment Corporation, Appellant.

Gen. No. 10,415.

Heard in this court at the
May term, 1950. Opinion filed October 20, 1950.
Released for publication November 8, 1950.

BESSE & BESSE, of Sterling, for appellant; KENNARD
J. BESSE and L. VERNON FRYE, both of Sterling, of
counsel.

BURRELL & BURRELL, of Freeport, for appellee; DAVID
M. BURRELL and R. B. HOLTAN, both of Freeport, of
counsel.

MR. JUSTICE BRISTOW delivered the opinion of the court.

This is an appeal from a summary judgment entered by the circuit court of Stephenson county ordering defendant, Transportation Investment Corporation, the maker of a check, to pay to plaintiff, Robert J. Schmelzle, the accommodation endorser for the payee, the sum of $13,500, the face amount of the instrument.

The primary inquiry is whether an accommodation endorser for the payee of a check, can recover from the maker the face amount of the check, which the endorser was called upon to pay the bank upon the maker's refusal to honor the instrument, notwithstanding an alleged failure of consideration for the check by the payee. There is, in addition, the issue of proper venue.

From the pleadings and affidavits upon which this appeal is predicated, it appears that on January 9, 1948, the defendant, Transportation Investment Corp., delivered a check for $13,500 to L. D. Bailey, an officer of the Twin City Transit Lines, Inc., the payee. On February 16, 1948, plaintiff, Robert J. Schmelzle, endorsed the check for the accommodation of the payee. The check was delivered to The Auto Mart, Inc., which cashed it at the First National Bank of Freeport. The check was not honored, and plaintiff was called upon to pay the First National Bank the $13,500, for which he is now suing the defendant.

As a defense to liability on the instrument, defendant alleges that in return for the check in controversy, and as the sole consideration therefor, defendant received from L. D. Bailey two checks totaling $13,500, dated February 13 and 14, respectively, made by The Auto Mart, Inc., of which Bailey was also an officer, and signed by him and Imelda Bailey. The affidavits of defendant's president attest that he was told by Bailey

640

that defendant's check for $13,500 would not be deposited until the checks of The Auto Mart had cleared. Defendant further alleges that these checks were not paid, and, therefore, claims that there was a failure of consideration for the instrument involved herein, which precludes plaintiff from recovering in this proceeding.

Defendant moved for a change of venue on the grounds that no part of the transaction between plaintiff and defendant occurred in Stephenson county, but rather in Cook county, and that the defendant corporation does not maintain offices or have a registered agent in Stephenson county.

The court denied this motion, dismissed defendant's special defense of failure of consideration, and granted plaintiff's motion for a summary judgment against defendant for the amount of the check, from which judgment defendant has prosecuted this appeal.

This court will consider first the matter of proper venue, and then determine whether there was a failure of consideration for defendant's check, or a question of fact raised thereon, and if so, whether this defense could be validly asserted against the plaintiff.

The Illinois statute pertaining to venue provides, in substance, that every civil action shall be commenced in the county where one or more defendants reside, or in which the transaction, or some part thereof, occurred, out of which the cause of action arose. (Ch. 110, pars. 131, 132, Ill. Rev. Stat. 1949 [Jones Ill. Stats. Ann. 104.007, 104.008].) In *La Ham v. Sterling Canning Co., Inc.*, 321 Ill. App. 32, it is stated that the word "transaction" in the statute is modified by the phrase "out of which the cause of action arose." Ordinarily, a cause of action includes "every fact necessary for plaintiff to prove to entitle him to succeed—every fact that defendant would have a right to traverse." (*Walters v. City of Ottawa*, 240 Ill. 259.)

██ In the instant case plaintiff and defendant had no personal or direct dealings in any county, however, certain acts, which were integral parts of plaintiff's cause of action, and which he would have to establish in order to assert any rights on the instrument, occurred in Freeport, in Stephenson county. It was there that plaintiff endorsed the check for the accommodation of the payee, Twin City Transit Lines, Inc., which had its principal office and registered agent there; that plaintiff paid the amount of the check to the First National Bank of Freeport, after the bank notified plaintiff that defendant had refused payment; and that plaintiff received the instrument itself from the bank. Under these circumstances, it would appear that a substantial part of the ''transaction'' out of which plaintiff's individual cause of action arose, did occur in Stephenson county, hence it was not error for the circuit court to deny the motion for change of venue.

Inasmuch as the purpose of a proceeding for summary judgment is to determine whether a defense exists (*Diversey Liquidating Corp. v. Neunkirchen,* 370 Ill. 523), and since such a judgment is proper only where no triable questions of fact are presented in the pleadings and affidavits (*C. I. T. Corp. v. Smith,* 318 Ill. App. 642), this court will consider the nature of the defense submitted by defendant.

In his answer, defendant alleges that there was a total failure of consideration for the check in controversy, since it was issued in exchange for two postdated checks, totalling $13,500, which were never paid. In the affidavits supporting defendant's motion for change of venue, and in opposition to plaintiff's motion for summary judgment, defendant further alleged that at the time the checks were exchanged between defendant and the payee, defendant was told by L. D. Bailey, on behalf of the payee, that defendant's check

for $13,500 would not be deposited until the two checks given to defendant had cleared.

It is established that in an exchange of checks each is deemed a consideration for the other, and an independent obligation not conditioned upon the payment of the other, provided there is no restriction on use or negotiation. (Beutel's, Brannon, Negotiable Instruments Law, p. 508; 7 A. L. R. 1569.)

In the instant case it appears from defendant's pleadings and affidavits in support thereof, that, although cross checks were given by defendant and the payee, there is a question of fact presented as to whether there was a restriction on the negotiation of the instrument in controversy until the two checks given by the payee, as consideration had cleared. If such a restriction were established, then the fact that the two checks were never paid would be deemed as a failure of consideration as between the original parties.

Whether this defense could be validly asserted against the plaintiff depends upon the provisions of the Negotiable Instruments Law and the law merchant. Under the Negotiable Instruments Law, failure of consideration may be a valid defense against the payee (ch. 98, par. 10, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 89.010]), but will not constitute a defense against a holder in due course (ch. 98, par. 78 [Jones Ill. Stats. Ann. 89.078]).

It is readily apparent that plaintiff cannot qualify as a holder in due course within the purview of the statutory requirements specified in par. 72 [Jones Ill. Stats. Ann. 89.072], inasmuch as he acquired the instrument and paid value to the bank after the maker had refused payment thereon. Nor is his status comparable to one who acquires an instrument with knowledge of its infirmities, for there is no allegation that at the time plaintiff endorsed the instrument he knew of the failure

of consideration by the payee. Nor is his position analogous to that of one who fails to give value for the instrument. He is in the anomalous category of an accommodation endorser for the payee, who has been called upon, after the default of the maker, to pay the instrument to the bank which cashed the check. The only provision of the Illinois Negotiable Instruments Law pertaining to the rights of a party secondarily liable, who pays an instrument, is par. 142 [Jones Ill. Stats. Ann. 89.142], which is comparable to sec. 121 of the Uniform Negotiable Instruments Law. The relevant portion of this provision states:

"Where the instrument is paid by a party secondarily liable thereon, it is not discharged, but the party so paying it is remitted to his former rights as regards all prior parties, and he may strike out his own and all subsequent endorsements and again negotiate the instrument. . . ."

When this provision is applied to an accommodation endorser for the payee, who is a party secondarily liable, the phrase "remitted to his former rights" creates an ambiguity which has been recognized and analyzed by jurists and legal scholars. (Chaffee, "The Reacquisition of a Negotiable Instrument by a Prior Party," 21 Col. L. Rev. 538; 28 Harv. L. Rev. 102; Beutel's, Brannon, Negotiable Instruments Law, 7th ed. p. 1167; *Lill v. Gleason,* 92 Kan. 754, 142 Pac. 287; *Williams v. Walker,* 66 Cal. App. 672, 226 Pac. 939.)

In *Lill v. Gleason, supra,* the court, in construing a statutory provision identical to par. 142 of the Illinois Negotiable Instruments Law, stated:

"After he paid the note he had a right of some kind against somebody—the right to reimbursement from the party accommodated, the right to enforce the note against the defaulting maker, or both—but until he paid the note no obligation arose in his favor on the part of anybody, and of course the statute did not re-

mit him to a situation in which he was entirely remediless. The words 'remitted to his former rights' must be restricted in their application to a party secondarily liable who has himself been connected with the title of the instrument.''

This solution of the ambiguity is commended in 28 Harv. L. Rev. 102, and in Beutel's, Brannon, Negotiable Instruments Law, p. 1167. In the annotated text, it is explained that this construction, which applied sec. 121 (or par. 142 of the Illinois Negotiable Instruments Law) only to parties secondarily liable who are connected with the title to the instrument, leaves the case of the anomalous or accommodation endorser to be dealt with as at common law where he was entitled to recover. ''The common law treated this class of reacquirers as a purchaser. . . . The existence of equitable defenses was no defense against him if he was without notice when he endorsed.'' (Chaffee article, *supra*, at p. 547.)

In *Williams v. Walker, supra,* the plaintiff, who endorsed for the accommodation of the payee, paid the instrument and sought to recover from the maker. The court, in rejecting the defense of fraud interposed by the maker, stated:

''In this action it would have no affect upon the indicated rights and liabilities of respondents whether or not the defenses above referred to would be available to appellants in an action between the original parties to the note, if respondents endorsed it without knowledge of any equities in favor of appellants.''

Similarly, as hereinbefore noted, there is no allegation that plaintiff knew of the failure of consideration at the time he endorsed the check.

The general rule adhered to in the case law is stated in 11 C. J. S. 317, § 750:

''An accommodation endorser who has been obliged to meet the obligation at its maturity has the full

645

rights of a bona fide holder for value of commercial paper against all prior parties to the instrument other than the party accommodated.''

Apparently, the only Illinois authority involving the general problem is *Graves v. Neeves*, 183 Ill. App. 235, which is an abstract opinion decided without reference to the Illinois Negotiable Instruments Law. It was held therein that '' . . . where an endorser of a note writes his name underneath the name of a payee so that a bank will discount the note from the payee, and is obliged to pay the amount due the bank, and receives the note, he is the owner by purchase from the bank, and can recover against the maker, and is not a mere volunteer or guarantor without the request of the maker.''

██  It does not appear that the defendant maker therein interposed any special defenses which were available against the payee. Therefore, while the case did establish that upon payment of the instrument the accommodation endorser acquired a right against the maker, it did not in specific terms hold that such right was not subject to existing equities between the original parties. However, in the light of our analysis of the foregoing authorities, it is our judgment that the law recognizes the right of an accommodation endorser, after payment of the instrument, to proceed against the maker, irrespective of a failure of consideration between the original parties, provided the endorser signed the instrument without knowledge of any such infirmity.

On this appeal, and dehors the pleadings, defendant has asserted the defense that the Freeport bank, which cashed the check for the payee, and thereafter endorsed it to plaintiff when he paid the instrument, may not be a holder in due course by reason of the delay in presenting the instrument. Hence, defendant argues, even if plaintiff succeeded to the rights of the bank,

the original equities between the maker and the payee could be asserted against the bank and the plaintiff, on the ground that neither party was a holder in due course.

The status of the bank as affecting plaintiff's right to recover on the instrument, and as constituting a further defense to this action, was not presented in defendant's pleadings or affidavits before the trial court. Defendant merely asserted therein that there was a failure of consideration between the original parties which constituted a defense against plaintiff accommodation endorser.

In determining the propriety of the summary judgment entered by the circuit court, this court is limited to matters presented in the pleadings and affidavits, and defenses cannot be invoked for the first time on appeal. Under our analysis of defendants pleadings and affidavits, even if every fact stated therein could be established in open court, no legally sufficient defense to this proceeding was presented. It is our judgment, therefore, that the circuit court did not err in entering a summary judgment in favor of the plaintiff accommodation endorser, and that judgment should properly be affirmed.

*Judgment affirmed.*